**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARK EDWARD NICHOLS, | 3:17-cv-00593-LRH-CBC |
| Plaintiff, | |
| v. | |
| NANCY A. BERRYHILL, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| Acting Commissioner of Social Security, | |
| Defendant. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is Plaintiff's motion for reversal and/or remand (ECF No. 16).  Defendant filed an opposition and cross-motion to affirm (ECF No. 17/19).  Plaintiff opposed the motion to affirm (ECF No. 20).  For the reasons set forth herein, the Court recommends that Plaintiff's motion for reversal and/or remand (ECF No. 16) be denied, and defendant's cross-motion to affirm (ECF No. 17) be granted.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On June 6, 2013, Mark Edward Nichols ("Plaintiff") protectively filed for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act, alleging a disability onset date of August 23, 2012. (Administrative Record ("AR") 13, 173–76.)  The Social Security Administration denied Plaintiff's application in the first instance on June 13, 2014, and upon reconsideration on October 20, 2014. (*Id.* at 110–13, 115–17.)

On February 10, 2016, Plaintiff and his attorney appeared at a hearing before Administrative Law Judge ("ALJ") Ryan Johannes. (*Id.* at 40–80.)  Jacqueline Vincent-Hawn, a vocational expert ("VE"), also appeared at the hearing. (*Id.*)  The ALJ issued a

1  written decision on April 28, 2016, finding that Plaintiff is not disabled because he can

2  perform his past relevant work as well as other work existing in significant numbers.  (*Id.*

3  at 18–32.)  Plaintiff appealed, and the Appeals Council denied review on July 27, 2017.

4  (*Id.* at 1–3.)    Accordingly, the ALJ's decision became the final decision of the

5  Commissioner ("Defendant").  Having exhausted all administrative remedies, Plaintiff filed

6  a complaint for judicial review on September 26, 2017.  (ECF No. 1.)

7  **II.    STANDARD OF REVIEW**

8      The Court must affirm the ALJ's determination if it is based on proper legal

9  standards and the findings are supported by substantial evidence in the record.  *Stout v.*

10  *Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. §

11  405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by

12  substantial evidence, shall be conclusive").  "Substantial evidence is more than a mere

13  scintilla but less than a preponderance."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1

14  (9th Cir. 2005) (internal quotation marks and citation omitted).  "It means such relevant

15  evidence as a reasonable mind might accept as adequate to support a conclusion."

16  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting

17  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938));

18  *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

19      To determine whether substantial evidence exists, the Court must look at the record

20  as a whole, considering both evidence that supports and undermines the ALJ's decision.

21  *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted).  "However, if

22  evidence is susceptible of more than one rational interpretation, the decision of the ALJ

23  must be upheld."  *Id.* ay 749 (citation omitted).  The ALJ alone is responsible for

24  determining credibility and for resolving ambiguities.  *Meanel v. Apfel*, 172 F.3d 1111,

25  1113 (9th Cir. 1999).

26      The initial burden of proof rests upon the claimant to establish disability.  20 C.F.R.

27  § 404.1512(a); *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986) (citations omitted).

28  To meet this burden, a Plaintiff must demonstrate an "inability to engage in any substantial

2

gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A).

III.    **DISCUSSION**

      A.    **SSDI claims are evaluated under a five-step sequential process.**

      The Commissioner has established a five-step sequential process for determining whether a person is disabled.  20 C.F.R. § 404.1520(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim.  *Id.*

      In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); *Bowen v. Yuckert*, 482 U.S. 137, 140-41, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

      The second step requires the Commissioner to determine whether the claimant's impairment or combinations of impairments are "severe."  20 C.F.R. § 404.1520(a)(4)(ii), (c); *Yuckert,* 482 U.S. at 140-41.  An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities.  *Id.*  Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" which would include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting."  20 C.F.R. § 404.1521.  If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(ii),

1    (c).  If, however, the Commissioner finds that the claimant's impairment is severe, the

2    Commissioner proceeds to step three.  *Id.*

3          In step three, the Commissioner determines whether the impairment is equivalent

4    to one of a number of specific impairments listed in 20 C.F.R. pt. 404, subpt. P, app.1

5    ("Listed Impairments").  20 C.F.R. § 404.1520(a)(4)(iii), (d).  (The Commissioner presumed

6    the Listed Impairments are severe enough to preclude any gainful activity, regardless of

7    age, education, or work experience.  20 C.F.R. § 404.1525(a)); *see also Sullivan v. Zebley*,

8    493 U.S. 521, 532 (1990) (internal quotation omitted) (emphasis in original).  If the

9    claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient

10   duration, the claimant is conclusively presumed disabled.  20 C.F.R. § 404.1520(a)(4)(iii),

11   (d).  If the claimant's impairment is severe, but does not meet or equal one of the Listed

12   Impairments, the Commissioner proceeds to step four.  *Yuckert*, 482 U.S. at 141.

13         In step four, the Commissioner determines whether the claimant can still perform

14   "past relevant work."  20 C.F.R. § 404.1520(a)(4)(iv), (e), (f).  Past relevant work is that

15   which a claimant performed in the last fifteen (15) years, which lasted long enough for him

16   or her to learn to do it, and was substantial gainful activity.  20 C.F.R. § 404.1565(a).  The

17   ALJ considers the claimant's "residual functional capacity" ("RFC") and the physical and

18   mental demands of the work previously performed.  20 C.F.R. § 404.1520(f); *see also*

19   *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).  The RFC is the most the claimant

20   can do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).  To determine the

21   claimant's RFC, the ALJ must assess all the evidence, including medical reports and

22   descriptions by the claimant and others of the claimant's relevant limitations.  *See Id.* §

23   404.1545(a)(3).

24         At step four, the ALJ may consider any of the claimant's daily activities that "may

25   be seen as inconsistent with the presence of a condition which would preclude all work

26   activity."  *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of

27   disability benefits where claimant could "take care of her personal needs, prepare easy

28   meals, do light housework, and shop for some groceries"); *see also Burch v. Barnhart*,

400 F.3d 676, 681 (9th Cir. 2005) (upholding denial of benefits based in part on determination that claimant performed daily activities that were transferrable to a work setting); compare *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (concluding activities not transferrable to work setting); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (claimant should not be "penalized for attempting to lead [a] normal [life] in the face of [her] limitations"); *Fair v. Bowens*, 885 F.2d 597, 603 (9th Cir. 2007) (noting that "many home activities are not easily transferrable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f); *see also Berry*, 622 F.3d at 1231 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.")

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e), (f); *see also Yuckert*, 482 U.S. at 141-142, 144. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Id.* The ALJ may meet his burden either through the testimony of a vocational expert or by reference to what is referred to as "the Grids". *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

"The [G]rids are matrices of the four factors identified by Congress – physical ability, age, education, and work experience – and set forth in rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national

economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d. 1068, 1071 (9th Cir. 2010) (internal quotation and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id.* Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education, and work experience. *Id.* For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id.*

The ALJ may not rely solely on the Grids unless they accurately and completely describe the claimant's abilities and limitations. *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985) (citation omitted). The ALJ must take the testimony of a vocational expert where the claimant suffers from non-exertional limitations that are "sufficiently severe so as to significantly limit the range of work permitted by his exertional limitation." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (internal quotation and citation omitted). Further, where the ALJ finds that a nonexertional limitation alone is severe [at step two of the sequential process] (absent any exertional limitation), the ALJ is not required to seek the assistance of a vocational expert at step five unless the nonexertional limitation(s) are "significant, sufficiently severe, and not accounted for in the grid[s]." *See id.* at 1076.

If, at step five, the ALJ establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the ALJ determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). However, "[a] finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Bustamante*, 262 F.3d at 954.

1

2

   **B.    The ALJ followed the five-step process and concluded that Plaintiff**
   **was not disabled.**

3    In reviewing Plaintiff's claims for benefits, the ALJ followed the five-step process

4  described above.  The ALJ first determined that Plaintiff had not engaged in substantial

5  gainful activity from the date of alleged onset, August 23, 2012, through his date last

6  insured, December 31, 2018.  (AR 23-24.)  At step two, the ALJ found that Plaintiff's

7  degenerative disc disease of the cervical spine, status post remote fusion; degenerative

8  disc disease of the lumbar spine with spondylosis, status post laminectomy; bilateral

9  carpal tunnel syndrome, status post-surgical releases with bilateral scaphotrapezial

10 arthritis and post bilateral thumb CMC arthroplasty; asthma; bipolar disorder; and history

11 of alcohol and marijuana dependence, in current remission, were severe impairments that

12 significantly limited his ability to perform basic-work related functions.  (*Id.* at 24.)  At step

13 three, the ALJ concluded that plaintiff did not have an impairment or combination of

14 impairments that met or medically equaled the severity of any listed impairment.  (*Id.* at

15 24–25.)

16    The ALJ proceeded to step four and made several findings.  To begin, the ALJ

17 concluded that Plaintiff had the RFC to perform light work with some limitations.  (*Id.* at

18 26.)  For example, that he must avoid jobs that require repetitive climbing and must avoid

19 working at unprotected heights or with dangerous machinery.  (*Id.*)  The ALJ also found

20 that he is limited to performing simple, routine work, and he may have brief and superficial

21 contact with the general public, supervisors, and coworkers.  (*Id.*)  Next, the ALJ found

22 that plaintiff's impairments could be expected to cause the symptoms alleged, but that his

23 statements regarding the intensity, persistence, and limiting effects of those symptoms

24 were not entirely credible.  (*Id.* at 26–32.)  In reaching this conclusion, the ALJ reviewed

25 and discussed the objective medical evidence, medical opinions, and clinical findings.  (*Id.*)

26 Finally, the ALJ determined that Plaintiff's RFC does not prevent him from returning to any

27 of his past relevant work.  (*Id.* at 30-31.)

28

1    Proceeding to step five, and relying on the testimony of the VE, the ALJ determined

2    that Plaintiff's age, education, work experience, and RFC would allow him to not only

3    perform his past relevant work, but also occupations existing in significant numbers in the

4    national economy, such as: shipping checker and returns clerk.    (*Id.* at 31-32.)

5    Accordingly, the ALJ held that Plaintiff was not disabled and denied him SSDI claim.  (*Id.*

6    at 32.)

7        **C.    RFC Assessment**

8        Plaintiff first challenges the ALJ's RFC finding and contends that the ALJ's decision

9    was based on legal error because the RFC finding was not supported by substantial

10    evidence in the record.  (ECF No. 16 at 22-23.)  Specifically, Plaintiff asserts that the ALJ

11    failed to accord proper weight to the opinion of Plaintiff's treating physician.    (*Id.*)

12    Defendant responds that the ALJ discussed the treating physician's opinion in detail and

13    offered good reasons to reject it, all of which were supported by the record and by the law.

14    (ECF No. 19 at 7-11.)

15        Generally, an ALJ should give more weight to the opinion of a treating source than

16    to the opinion of non-treating doctors.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995);

17    *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  "At least where the treating doctor's

18    opinion is not contradicted by another doctor, it may be rejected only for 'clear and

19    convincing' reasons."  *Lester*, 81 F.3d at 830 (quoting *Baxter v. Sullivan*, 923 F.2d 1391,

20    1396 (9th Cir. 1991)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  "Even if the

21    treating doctor's opinion is contradicted by another doctor, the Commissioner may not

22    reject this opinion without providing 'specific and legitimate reasons' supported by

23    substantial evidence in the record."  *Lester*, 81 F.3d at 830 (quoting *Murray v. Heckler*,

24    722 F.2d 499, 502 (9th Cir. 1983)).

25        However, "[i]t is clear that it is the responsibility of the ALJ, not the claimant's

26    physician, to determine residual functional capacity."  *Vertigan v. Halter*, 260 F.3d 1044,

27    1049 (9th Cir. 2001).    The ALJ must also consider the opinions of state agency

28    consultative examiners.  *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).  When the

opinions of treating and examining doctors conflict, it is the ALJ's duty to resolve the conflicts. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). "[W]hen an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'" *Orn*, 495 F.3d at 632; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion "alone constitutes substantial evidence, because it rests on [the doctor's] own independent examination of [the claimant]").

Further, the ALJ must also consider the findings of fact and opinions of non-examining state agency medical and psychological consultants and other program physicians and psychologists, who are experts in Social Security disability programs. Social Security Ruling ("SSR") 96-6p, 1996 SSR LEXIS 3, 1996 WL 374186. Such consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act . . . they consider the medical evidence in disability cases and make findings of fact on medical issues, including, but not limited to, the existence and severity of an individual's impairment." *Id.* The ALJ may rely on opinions from state agency reviewers if those opinions are well-supported and consistent with the record as a whole. *Id.* "[O]pinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." *Id.*

Here, the ALJ indicated that medical records reflect that Plaintiff was diagnosed with degenerative disc disease of both the cervical and lumbar spine, bilateral carpal tunnel syndrome, asthma, bipolar disorder, and a history of alcohol and marijuana dependence. (AR 24.) Treatment notes reflect that he was able to maintain a high functional level with surgical and pharmaceutical intervention and, whereas he has not worked full-time since August 18, 2012, Plaintiff has maintained an active lifestyle, including competitive bike riding. (*Id.* at 24-26.) The record further indicates that Plaintiff underwent a remote spinal fusion in 1992, a laminectomy is 2015, surgical releases with bilateral scaphotrapezial arthritis in 2012, and a bilateral thumb CMC arthroplasty in

1    2015/2016.  (*Id.*)  He has also been diagnosed with bipolar disorder that has been

2    successfully managed with medication in the past.  (*Id.* at 23-27.)  Based on these records,

3    the ALJ found that Plaintiff had severe impairments.  (*Id.* at 24.)

4        The ALJ considered the opinion of treating family physician Jonathan B.C.

5    Humphrey, M.D.  (*Id.* at 29.)  Dr. Humphrey filled out a mental medical source statement

6    form and indicated that Plaintiff is profoundly bipolar and suffers from racing thoughts,

7    pressured speech, poor memory recall and mood swings.  (*Id.* at 724-28.)  He listed the

8    following findings:  Plaintiff is depressed, has cycling mood swings, impulsive or damaging

9    behavior, severe pain from his degenerative discs and carpal tunnel, and poor social

10   support.  On a chart entitled Mental Impairment Questionnaire, under "estimate your

11   patient's ability to perform . . . in a competitive environment on a sustained and ongoing

12   basis (8 hours per day, 5 days per week)," Dr. Humphrey checked  "[c]omplete a workday

13   without interruptions from psychological symptoms," as "marked."  (*Id.* at 727.)  He also

14   indicated on the questionnaire that he anticipated that Plaintiff's impairments would cause

15   him to be absent from work about three days per month.  (*Id.* at 728.)  He opined that

16   Plaintiff would be unable to meet competitive standards of understanding, remembering,

17   social interactions, dealing with the stress of semiskilled or skilled work, and that he would

18   be more than limitedly impaired in accepting instructions and responding appropriately to

19   criticism from supervisors, and dealing with normal work stress.  (*Id.* at 727.)

20       The ALJ, however, discredited many of Dr. Humphrey's conclusions as well,

21   because they contradicted other statements on the same questionnaire as well as his

22   treatment notes.  (*Id.* at 28-29.)  For example, on the questionnaire Dr. Humphrey also

23   assessed that Plaintiff would be capable of remembering locations and work procedures,

24   understanding and remembering detailed instructions, making simple work-related

25   decisions, sustaining an ordinary work routine without supervision, performing activities

26   within a schedule and consistently be punctual, asking questions and requesting

27   assistance, and traveling to unfamiliar places or using public transportation.  (*Id.* at 726-

28   728.)  Dr. Humphrey saw Plaintiff regularly over a period of years, but the notes from the

1   majority of the visits reflect that Plaintiff's mood was euthymic, with no indication of

2   abnormal mental status.  (*Id.* at 329-65, 500-12, and 714.)  Additionally, treatment notes

3   from Kevin Gersten, M.D., refer to Plaintiff's mood and affect as "pleasant," and treatment

4   notes from Stanford Health Care note that whereas, "he was diagnosed differentially as

5   having bipolar disorder [in the past] [sic] he was later reviewed to have actual epilepsy

6   with symptomatic manifestations appearing as bipolar."  (*Id.* at 414 and 827.)

7   Furthermore, Dr. Humphrey continually notes that Plaintiff's condition has improved with

8   pharmaceutical management.  (*Id.* at 339-84, 500, 510, and 953.)  No objective medical

9   evidence in the record suggests an inability to function, in fact, the evidence indicates that

10  Plaintiff leads a highly functional and active life.  (*Id.* at 30.)

11      The ALJ further considered the opinion of treating physician Nichole Delaplante,

12  M.D.  (*Id.* at 29.)  Dr. Delaplante filled out a mental medical source statement form and

13  indicated that Plaintiff has CMC arthritis and lumbar stenosis with radiculopathy.  (*Id.* at

14  758.)   She listed the following findings: Plaintiff experiences pain, numbness, and

15  weakness in both of his hands, that sitting, standing, bending, twisting, carrying, and lifting

16  aggravate the pain, that no medications have been attempted to produce less

17  symptomatology, that is medically necessary for Plaintiff to avoid continuous sitting in an

18  eight hour workday, that Plaintiff cannot lift any amount of weight at anytime, and that

19  Plaintiff's symptoms will likely increase in a competitive work environment.  (*Id.* at 758-62.)

20  She opined that Plaintiff would be absent more than three times a month.  (*Id.*)

21      The ALJ, however, discredited many of Dr. Delaplante's conclusions as well,

22  because they contradicted other statements on the same questionnaire as well as her

23  treatment notes.  (*Id.* at 29.)  For example, treatment notes from Tahoe Fracture and

24  Orthopedic report that three months after lumbar surgery, Plaintiff had returned to "doing

25  a lot of his yoga" and that "[h]e is doing some bicycle riding."  (*Id.* at 1108.)  Additionally,

26  treatment notes from Stanford Health Care indicate Plaintiff "displays no pain behaviors,"

27  and that prior to surgery there was only minimal limitation to his range of motion.  (*Id.* at

28  827-28.)  Furthermore, Dr. Delaplante's own records indicate that the questionnaire was

only to be used for short-term disability and that for a determination of long-term disability it "will need to be established by occupational medicine a physical medicine rehabilitation where he can have a[n] objective assessment of his disability," there is no indication in the record that Dr. Delaplante ever completed such an examination. (*Id.* at 766.) Due to these inconsistencies, the ALJ accorded little weight to Dr. Delaplante's opinion. (*Id.* at 30.)

The ALJ gave light weight to two state agency psychiatrists, Pastora Roldan, M.D., and R. Torigoe, M.D., who reviewed the medical evidence on file and completed a "Psychiatric Review Technique" form. (*Id.* at 28.)  Neither psychiatrist had sufficient medical evidence to make a determination as Plaintiff refused to attend two scheduled psychological consultative examinations to assist in this determination. (Id. at 28, and 95-106.)  By contrast, the ALJ accorded significant weight to state agency physician Sandra Battis, M.D., who reviewed the medical records relating to Plaintiff's spinal issues, carpal tunnel, and bipolar disorder and concluded that Plaintiff had mild difficulties. (*Id.* at 95-106.)  Dr. Battis considered Plaintiff's documented spinal and hand surgeries, use of pharmaceutical treatment, complaints of neck, back, and hand pain, and existing mental health records. (*Id.*)  She also took into account Plaintiff's subjective complaints. Dr. Battis opined that the Plaintiff would be able to perform light work avoiding concentrated exposure to hazards, with only light lifting not to exceed twenty (20) pounds, and with avoidance of climbing ladders, ropes, or scaffolds. (*Id.*)  The ALJ found these conclusions consistent with the record as a whole, in light of the Plaintiff's surgical procedures. (*Id.* at 28.)

The ALJ concluded that Plaintiff has the residual functional capacity to perform past relevant work and light work as defined in 20 C.F.R. § 404.1567(b) except that he may not frequently climb stairs or ramps; climb ladders, ropes, and scaffolds; frequently balance and kneel; drawl; frequently handle or finger; work at unprotected heights. (Id. at 26.) Furthermore, he is limited to occasionally stooping and crouching, with occasional exposure to vibration, moving mechanical parts, and working with the general public. (*Id.*)

Plaintiff bears the burden of providing disability.  *See* 20 C.F.R. §§ 404.1512(a), 416.912(a).  Notably the ALJ accorded the most weight to the reports of state agency physician Dr. Battis and state agency psychiatrists Dr. Roldan and Dr. Torigoe.  The ALJ concluded that these three reports were consistent with the medical records as a whole.  Plaintiff argues that the ALJ did not properly weigh the opinion of his treating physicians.  However, the ALJ set forth an appropriate basis for according less weight to Dr. Humphrey's and Dr. Delaplante's opinions as set forth on the questionnaires because both doctors' statements on the largely check-box style forms were conclusory and because their own treatment notes, and the treatment notes of other medical personnel, contradicted the conclusion that Plaintiff's impairments were severe enough to prevent him from working.  (*Id.* at 26-30.)  *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (treating physicians' views carried only minimal evidentiary weight because they were in the form of a checklist, did not have supportive objective evidence and were inconsistent with other evidence).  An ALJ may permissibly reject a treating physician's opinion when that opinion is inconsistent with the physician's own treatment notes and when the opinion is not supported by clinical findings.  *See* 20 C.F.R. §§ 404.1527(c)(3) & (c)(4); *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009).  The medical records provide no objective findings to support either Dr. Humphrey's or Dr. Delaplante's conclusions that Plaintiff is severely limited.  Accordingly, the Court finds that substantial evidence supports the RFC determination.

### D. Credibility Determination

Plaintiff also argues that the ALJ's findings as to his credibility were not supported by substantial evidence in the record and that he failed to articulate clear and convincing reasons for not fully crediting Plaintiff's subjective pain and limitation testimony.  (ECF. No. 16 at 30-32.)

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989.)  The ALJ must evaluate the credibility of a claimant's subjective testimony in a two-step analysis.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036; 42 U.S.C. § 423(d)(5)(A) ("an individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"). If the claimant meets the first test and there is no evidence of malingering, the ALJ may only reject the claimant's testimony about the severity of the symptoms if he or she gives 'specific, clear and convincing reasons' for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingerfelter*, 504 F.3d at 1036). "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).

"Factors that the adjudicator may consider when making such credibility determinations include the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). While medical opinions are not controlling in assessing credibility, they are nonetheless probative evidence for the ALJ to consider. 20 C.F.R. §§ 404.1529(c), 416.929(a)(2012); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). "[L]ack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. However, "[t]he fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996)). The causal relationship between the objective evidence of a medical impairment and the claimant's complaints need only be a "reasonable inference," not a "medically proven phenomenon." *See Smolen*, 80 F.3d at 1282.

1    In this case, the ALJ found that Plaintiff's medically determinable impairments could

2    reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements that

3    he is unable to work due to his mental and physical conditions and limitations are not

4    credible to the extent they are inconsistent with the ALJ's RFC determination.  (AR 27-28.)

5    Plaintiff reports he has constant pain (*Id.* at 44), reduced use of his hands (*Id.* at 45),

6    seizures (*Id.* at 50), and rapid cycling bipolar disorder (*Id.* at 52).  He testified at the hearing

7    that he can prepare a meal, wash dishes, do laundry, vacuum, pay bills, handle a checking

8    or savings account, go grocery shopping with a regular cart, take care of two German

9    shepherds, and use a computer for short periods of time.  (*Id.* at 52-63.)  Plaintiff further

10   testified at the hearing that he usually goes to yoga at 9:30 in the morning, comes home

11   and makes lunch, followed by a walk in the forest with his dogs, a nap, then makes dinner

12   and either goes for a walk, bike rides, or goes to another yoga class.  (*Id.* at 63.)  During

13   the summer he bikes a couple times a week for one hour to two hours.  (*Id.*)  He can take

14   care of his daily needs and how far he can walk depends on how much oxycodone he has

15   taken for the day but he reports that even without oxycodone he can walk a mile.  (*Id.* at

16   63-64.)  However, he also stated that his ability to sit is "the same as riding my bike, or the

17   same as walking, or the same as going to yoga . . .it is very uncomfortable."  (*Id.*)  Plaintiff

18   testified that pain from his back, neck and hands, as well as his bipolar disorder prevents

19   him from working.  (*Id.* at 52-80.)

20   The ALJ concluded that while Plaintiff's type and frequency of treatment and

21   prescribed medications are consistent with his claim of pain, the record contains

22   substantial evidence that his conditions are not as limiting as he asserts.  (*Id.* at 27-28.)

23   The ALJ states that the record supports degenerative disc disease, carpal tunnel, and

24   bipolar disorder.  (*Id.*)  The ALJ also found that Plaintiff underwent several procedures and

25   a number of medical interventions to reduce his symptomology and that almost every

26   treatment note indicates he reported relief.    Plaintiff claims that he experiences

27   significantly reduced range of motion and functioning.  However, the Stanford Health

28   Center reported that Plaintiff only had minimal changes in his range of motion prior to

1    surgery, with the average reduction being between 3-5 percent, and Plaintiff reported

2    improvement after surgery.  (*Id.* at 827-28.)   Furthermore, the Tahoe Fracture and

3    Orthopedic report indicates that Plaintiff experienced significant relief from his lumbar

4    surgery and that only three months post-op he was back to riding his bike and going to

5    yoga.  (*Id.* at 1108.)  The ALJ also noted that Plaintiff is currently managing an online jazz

6    radio station.  (*Id.* at 27.)

7         The Court concludes that the ALJ's credibility determination is supported by the

8    record and that they did not arbitrarily discredit Plaintiff's subjective testimony.  *See*

9    *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citing *Bunnell*, 947 F.2d at 345-

10   46) (lack of objective evidence to support a claimant's description of her pain and

11   limitations is a valid reason to discount her testimony); *Verduzco v. Apfel*, 188 F.3d 1087,

12   1090 (9th Cir. 1999) (testimony's inconsistency with the medical record is a valid reason

13   for rejecting the testimony).  "If the ALJ's finding is supported by substantial evidence, the

14   court 'may not engage in second-guessing.'"  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039

15   (9th Cir. 2008).  The ALJ properly weighed that Plaintiff's subjective pain and limitation

16   complaints and determined they were not supported by the medical record and Plaintiff's

17   own statements and testimony about his limitations and daily activities were often

18   contradictory.

19        Plaintiff argues that his daily activities should not have undermined his credibility

20   because they "do[sic] not indicate that he is able to work a full-time job."  (ECF No. 16 at

21   32.)  However, a Plaintiff's ability to perform a range of daily activities may be a valid basis

22   to discount his credibility.  *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2010)

23   ("Even where those activities suggest some difficulty functioning, they may be grounds for

24   discrediting the claimant's testimony to the extent that they contradict claims of a totally

25   debilitating impairment.")  The ALJ found Plaintiff was not a reliable witness.  While he

26   testified that he could not stand or sit for more than a few minutes he reported living an

27   active lifestyle that includes yoga, bike riding, and regular walks.   (AR  52-71.)

28   Furthermore, the Plaintiff testified that he could not socially interact with people at work

1   and could not manage the daily functions of work, yet he goes out to dinner with friends

2   and family roughly twice a month and manages an online radio station.  (*Id.*)

3       Finally, the ALJ properly considered that Plaintiff's physical and mental impairments

4   had been relieved by surgeries and medications.  *Id.* at 27-28; *see Warren v. Comm'r of*

5   *Soc. Sec. Admin.*, 439 F.3d 1001, 1008 (9th Cir. 2006); 20 C.F.R. § 404.1529(c)(3)(iv)-

6   (v).  The Court recognizes that the ALJ's credibility determination is entitled to deference

7   if it is supported by substantial evidence in the record.  Therefore, the Court finds that the

8   ALJ  properly  supported  and  adequately  explained  the  partially  adverse  credibility

9   determination with specific, clear, and convincing reasoning.  Accordingly, remand and

10  reversal is not warranted.

11      **E. Hypothetical Posed to Vocational Expert**

12      Finally, Plaintiff argues that the ALJ posed an improper hypothetical to the

13  Vocational Expert ("VE") when the ALJ asked the VE to consider whether an individual

14  with only occasional interaction with the general public, and with transferrable skills, could

15  perform light work positions.  (ECF No. 16 at 33; AR 75-80.)  Plaintiff contends that the

16  hypothetical failed to include Plaintiff's "ability to concentrate over a period of time, persist

17  at tasks, or maintain a [articular work space . . ."  (ECF No. 16 at 33.)

18      In making a determination of whether an individual could perform his past relevant

19  work, the ALJ may rely on the Department of Occupational Titles ("DOT") or choose to

20  consult a vocational expert.  *See* 20 C.F.R. § 404.1560(b)(2) (VE can be used at Step

21  Four to determine whether an individual can perform their past relevant work); *see also*

22  *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986) (VE properly testified as to impact

23  of a sit/stand option on available jobs).  Substantial evidence may be produced through

24  reliance on the testimony of a vocational expert in response to a hypothetical question,

25  but only if the question accurately portrays Plaintiff's individual physical and mental

26  impairments.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  "Hypothetical

27  questions posed to the vocational expert must set out all the limitations and restrictions of

28  the particular claimant, including, for example, pain and an inability to lift certain weights.

1   If the assumptions in the hypothetical are not supported by the record, the opinion of the

2   vocational expert that claimant has a residual working capacity has no evidentiary value."

3   *Embrey v. Brown*, 849 F.2d 418, 422 (9th Cir. 1988).  However, an ALJ is "free to accept

4   or reject restrictions in a hypothetical question that are not supported by substantial

5   evidence."  *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (citing *Osenbrock v.*

6   *Apfel*, 240 F.3d 1157, 1164-64 (9th Cir. 2001)).

7        Here, the ALJ asked the vocational expert to assume that a worker of Plaintiff's

8   vocational profile could perform work, except such work has to be limited to simple

9   repetitive tasks, either due to pain or medications or emotional conditions, in a non-public

10  work environment with minimal interaction with co-workers and supervisors.  (AR at 74-

11  77.)  Plaintiff asserts that this hypothetical was flawed because the ALJ erroneously

12  omitted moderate difficulty with concentration.  However, the ALJ's hypothetical contained

13  all of the limitations that the ALJ found credible and that were supported by substantial

14  evidence in the record.  For example, the record indicates that Plaintiff is capable of

15  managing his own money, shopping in stores, driving a car and managing his own

16  medication.  (*Id.* at 25.)  Given the extent of Plaintiff's ability to concentrate as

17  demonstrated by the record, the hypothetical was not flawed.

18  **IV.    CONCLUSION**

19        Based on the foregoing, the Court concludes that substantial evidence in the record

20  supported the ALJ's RFC determination.  Regarding Plaintiff's credibility, the ALJ gave

21  specific, clear and convincing reasons for partially discounting Plaintiff's subjective

22  symptom and limitations testimony, and this decision also was supported by substantial

23  evidence in the record.  Furthermore, the ALJ's hypothetical to the VE properly took into

24  account the extent of Plaintiff's limitations.  The Court therefore recommends that Plaintiff's

25  motion for remand and/or reversal (ECF No.16) be denied and that Defendant's cross-

26  motion to affirm (ECF No. 17) be granted.

27        1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may

28  file specific written objections to this Report and Recommendation within fourteen days of

receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**V.    RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for remand or reversal (ECF No. 16) be **DENIED** and Defendant's cross-motion to affirm (ECF No. 17) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: October 3, 2018.

_____
**UNITED STATES MAGISTRATE JUDGE**